# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| **MICHAEL MASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.: GLS-18-2060** |
| | ) | |
| **SUN RECYCLING, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

On July 7, 2018, Plaintiff Michael Mason ("Plaintiff" or "Mason") filed a complaint against Defendants Sun Recycling, LLC ("Sun Recycling") and Green Jobworks, LLC ("GJW"). (ECF No. 1). Thereafter, following the denial of Sun Recycling's first motion to dismiss the complaint (ECF No. 24), Plaintiff filed a First Amended Complaint (ECF No. 36)[1], alleging that both defendants violated of Title VII, 42 U.S.C. §2000e *et seq.* (Title VII), and the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C.§§ 12112(a), (b).

Pending before this Court is Defendant Sun Recycling's "Motion to Dismiss Plaintiff Michael Mason's First Amended Complaint" ("Motion to Dismiss"), which Plaintiff opposes, and a separate motion by Plaintiff to file a surreply. (ECF Nos. 51, 53, 56, and 61). The issues have been fully briefed, and no hearing is necessary. *See* Local Rule (L.R.) 105.6. For the reasons set

---

[1] On December 4, 2018, the Honorable Roger W. Titus presided over a motions hearing related to Sun Recycling's first motion to dismiss (ECF No. 24). The motion was granted in part and denied in part, and Plaintiff was granted leave to file an amended complaint (ECF No. 26). ECF No. 36 is the operative First Amended Complaint.

forth more fully below, Defendant Sun Recycling's motion is **GRANTED IN PART, DENIED IN PART.**[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

On October 31, 2013, Plaintiff, an African American, applied for a job with a temporary staffing agency called GJW. (ECF 36, ¶¶ 21, 27, 30). On his employment application, he noted that he suffered from bipolar disorder (*Id.*, ¶ 28). GJW hired Plaintiff on October 31, and on November 1, 2013 Plaintiff commenced working at Sun Recycling, which was located in Beltsville, MD. (*Id.*, ¶¶ 30-31).

According to Mason, while in the Sun Recycling breakroom on November 1, 2013, several Hispanic Sun Recycling employees "taunted, harassed and called him racial slurs," including "punta," "maricona," "mariposa," and "pendejo." (*Id.*, ¶¶ 34-37). These "taunts and ridicule" occurred daily during the period of November 2013-February 23, 2014, i.e., the entire time that Plaintiff worked at Sun Recycling before he was fired. (*Id.*, ¶ 38). Mason complained about this conduct "on at least 20 occasions" to "Sun management," including to Sun Recycling supervisors named "Evin" and "Vladimir." (*Id.*, ¶ 40). He also complained to the owner of GJW and several of the company's supervisors "on at least 10 occasions." (*Id.*, ¶ 39). Both GJW and Sun Recycling told Plaintiff to "ignore [the conduct]." (*Id.*, ¶ 41). Mason also claims that one of the same Sun Recycling supervisors to whom he complained about the "ridicule and harassment" repeatedly used the "N-word" when speaking to Plaintiff and his African American co-workers during the period of November 2013-February 2014. (*Id.*, ¶ 42). Plaintiff further contends that there were

---

[2] Defendant Green Jobworks has not filed a motion to dismiss. Accordingly, Counts I – IV of this case shall also proceed against that defendant.

[3] Unless otherwise noted, the facts are taken from the Amended Complaint, ECF No. 36, and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In addition, GJW has not filed or otherwise joined the motion to dismiss. Accordingly, this opinion does not address facts that relate uniquely to it that are not relevant to the resolution of Sun Recycling's motion.

several instances when he and an African American co-worker complained about Evin's use of the "N-word" to Sun management. (*Id.,* ¶ 43).

According to Mason, on November 20, 2013, a rock fell from the second story of the building and struck a piece of equipment, which was being operated by a Sun Recycling manager. (*Id.,* ¶¶ 46, 49). That Sun Recycling manager told Plaintiff that he was fired; later, a different Sun Recycling manager and a supervisor told him that he was fired. (*Id.,* ¶¶ 49, 54). At the time of the incident, Plaintiff was working next to a Hispanic co-worker, who was not fired. (*Id.,* ¶¶ 48, 55). That same day, GJW called Mason and told him that "Sun had fired [him];" GJW also told Plaintiff that he was "fired by them as well, and no work was available for [him]." (*Id.,* ¶¶ 56-57).

Later, on December 4, 2013, GJW told Plaintiff that Sun had rehired him, and he was directed to report to the Beltsville, MD recycling facility to work on the same project. (*Id.,* ¶¶ 62-63). Mason told a new GJW supervisor that he suffered from bipolar depression and was being treated for an episode. (*Id.,* ¶¶ 64,73-75, 84-86). He also told that supervisor about the prior harassment by the Hispanic Sun Recycling employees, and requested another work assignment, as an accommodation. (*Id.,* ¶¶ 64-65, 73-75, 84-86).

Plaintiff did return to Sun Recycling. In January 2014, he complained to a GJW owner and a Sun Recycling manager, about "the racial slurs and other harassing conduct" allegedly committed by the Hispanic workers. (*Id.,* ¶ 71).[4] During a January 6, 2014 staff meeting involving GJW's owner and a Sun Recycling manager, Plaintiff showed them "copies of the Equal Employment Opportunity Commission's ("EEOC") policies on harassment, discrimination, retaliation, and making a 'reasonable accommodation' for disabilities." (*Id.,* ¶ 73). Mason also

---

[4] According to Plaintiff, in December 2013 and February 2014, a Hispanic colleague twice approached him threatening physical violence, either with knives brandished or fists clenched. Mason complained both times to Sun Recycling supervisor(s) and/or a manager but was told to ignore the conduct. (*Id.,* ¶¶ 68-70, 76-78).

verbally requested relocation to a work assignment "physically away for his Hispanic harasser as a 'reasonable accommodation,'" duty to stress and anxiety related to the "daily" harassment and "his Bipolar Disorder." (*Id.,* ¶¶ 74, 85, 118,120). According to Plaintiff, his requests were denied. (*Id.,* ¶¶ 75, 119).

Plaintiff describes a February 21, 2014 incident where the Sun Recycling supervisor named Evin approached him, calling him the "N-word," and threatening him with bodily harm. According to the Plaintiff, this occurred after Plaintiff showed Evin an EEOC complaint form that he and other African American colleagues intended to file. Evin had to be physically restrained by a Sun Recycling supervisor. (*Id.,* ¶¶ 81, 83). After the incident with Evin, Mason met with Sun Recycling supervisor named Vladimir. He showed him the EEOC complaint, EEOC policies on retaliation, discrimination and ADA policies on "reasonable accommodation," to which Vladimir responded that Plaintiff was "making it hard for him to keep [Plaintiff] as a worker." (*Id.,* ¶¶ 84-86).

Two days later, on February 23, 2014, a GJW supervisor notified Mason that "[Sun Recycling] had once again fired Plaintiff from working at the Beltsville, MD facility." (ECF 36, ¶ 87). Other African American colleagues "were also called by GJW and told that they were also fired from working [at the Sun Recycling facility]." (*Id.,* ¶ 88). Hispanic workers, who were less qualified, replaced Plaintiff and the other African American employees. (*Id.,* ¶¶ 89-90).

Mason's First Amended Complaint also describes how he and another African American colleague were discussing the harassment by Hispanic Sun Recycling workers, and that Sun Recycling supervisor "Vladimir" reprimanded them for "goofing off." (*Id.,* ¶¶ 79, 80). Mason also contends that he and his African American colleagues were disciplined and terminated for alleged misconduct while similarly situated Hispanic workers engaged in the same actions yet received no adverse employment consequences. (*Id.,* ¶¶ 122-123).

In March 2014, Plaintiff contacted the EEOC about filing a charge of discrimination (*Id.* ¶ 140). Thereafter, on May 2, 2014, Plaintiff filed an official charge of discrimination against GJS and Sun Recycling (*Id.* ¶ 113). According to the EEOC, on March 28, 2018, it mailed a Right-to-Sue ("RTS") letter to Plaintiff at an address in College Park, Maryland, a place where Plaintiff did not reside (*Id.* ¶ 134). Plaintiff never received that letter (*Id.* ¶ 133);

In February 2019, Plaintiff filed his First Amended Complaint. In particular, Plaintiff asserts that Sun Recycling and GJW acted contrary to the law: he was discriminated against--i.e., subject to disparate treatment--based on his race, in violation of Title VII (Count II); he was subjected to a hostile work environment, in violation of Title VII (Count I); his employer failed to reasonably accommodate his disability and engage in an interactive process related to his accommodation request, in violation of the ADA (Count III); and he was terminated in retaliation for requesting a reasonable accommodation and because he complained of discrimination, in violation of Title VII and the ADA. (Count IV). (ECF No. 36).

## I.    MOTION FOR LEAVE TO FILE A SURREPLY

Following the briefing on the Motion to Dismiss, pursuant to Local Rule 105.2(a), Plaintiff filed a motion for leave to file a surreply. (ECF 61). Plaintiff sought to file the surreply because "Defendan[t] cite[s] cases on incorrect issues," which Plaintiff contends supports his position, and also because he sought to "address other allegations asserted by Defendant." (ECF No. 61, p. 1).

Local Rule 105.2(a) provides that, unless ordered by the court, surreply memoranda "are not permitted to be filed." In addition, the filing of a surreply is generally disfavored, however, whether to allow the filing is a matter within a court's discretion. *EEOC v. Freeman*, 961 F.Supp.2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015). A surreply is not generally allowed if it is merely responsive to an issue raised in a reply brief. *Khoury v. Meserve*,

268 F.Supp.2d 600, 605-06 (D. Md. 2003). A court could permit the filing of a surreply if the party seeking to file "would be unable to contest matters presented to the court for the first time" in a reply brief. *Freeman*, 961 F.Supp.2d at 801.

In this case, Sun Recycling filed its motion to dismiss, and Plaintiff had an opportunity to respond to those arguments. Sun Recycling's reply then responded to the arguments raised by Plaintiff, which is what should occur in a reply brief. Plaintiff was not denied an opportunity to respond to matters presented to the court for the first time, nor can he argue that he was surprised by a new argument advanced in the reply brief. Likewise, the surreply that Plaintiff would seek to file would merely be responsive to what was raised in the reply brief. (*See* ECF No. 61-1). Under these circumstances, I decline to exercise my discretion to allow for a surreply. *Freeman*, 961 F.Supp.2d at 801. Plaintiff's motion for leave to file a surreply (ECF No. 61) is DENIED.

## II.    MOTION TO DISMISS

### A.  Defendant's Arguments

In its Motion to Dismiss, Sun Recycling seeks dismissal of all of Plaintiff's claims. Defendant contends that: (1) Plaintiff's Complaint must be dismissed as untimely; (2) Sun Recycling was never Plaintiff's "employer," as that term is defined under Title VII, or his "joint employer;" (3) Plaintiff  has failed to demonstrate a hostile work environment based on race; (4) Plaintiff's disparate treatment claim fails because he can neither demonstrate satisfactory job performance nor that Sun Recycling took an adverse employment action against him; (5)(a) Plaintiff was not disabled or, alternatively, if he was disabled, Sun Recycling had no knowledge of his disability; (b) assuming that Plaintiff was disabled, he failed to articulate a specific accommodation request; and (6) he was not engaged in a protected activity, nor was an adverse

action taken against him; thus, his retaliation claim fails as a matter of law. (ECF No. 51-1, pp. 11-16).

**B. Legal Standard**

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), it is asserting that, even if you construe the facts advanced in the Plaintiff's complaint as true, that complaint fails to state a claim upon which relief can be granted. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). A court assesses whether a complaint states a claim for relief by reference to the pleading requirements of Fed.R.Civ.P. 8(a)(2). Pursuant to that rule, a complaint must contain a "short and plain statement of the claims showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is to provide a defendant with "fair notice" of the claims, and the bases for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion to dismiss, then, a complaint must contain sufficient facts, and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at 570. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 135 S.Ct. 346, 346 (2014) (per curiam). Nevertheless, if a complaint provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy what Rule 8(a)(2) requires, at minimum, the complaint must contain "enough factual matters [to] suggest" a cognizable cause of action, "even if [proof] of those facts is improbable," and the likelihood of recovery is "very

remote." *Id.* at 556. Moreover, "while a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise the right to relief above the speculative level." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002); *see also Harris v. Hous. Auth. of Balt. City*, WDQ 14-3395, 2015 WL 5083502, at * 5 (D.Md. Aug. 26, 2015).

In general, a court does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D.Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). Rather, as stated previously, the purpose of the rule is to ensure that the defendants receive "adequate notice" of the claims. *Twombly*, 550 U.S. at 555-56 (2007).

Finally, there are limited circumstances where a court may consider exhibits appended to a Rule 12(b)(6) motion and oppositions thereto, without converting the motion to a summary judgment motion. A court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)(citations omitted); see also *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). When a plaintiff "attaches or incorporates a document upon which his claims is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Moreover, a court can consider "a document submitted by [a] movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint. . . ." *Goines*, 822 F.3d at 166 (citations omitted).

### C. Timeliness of Complaint

To bring a Title VII claim in federal court, a plaintiff must file suit within ninety days of receiving notice of the right to sue. 42 U.S.C. § 2000e–5(f)(1). Defendant avers that Plaintiff's original complaint (dated July 7, 2018) must be dismissed because it was not filed within 90 days of receipt of his RTS letter from the EEOC.

The Fourth Circuit has made clear that "the date on which [a] claimant receive[s] the EEOC letter becomes critical in determining the commencement of the 90-day period." *Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630, 1999 WL 556446, *3 (4th Cir. July 30, 1999)(unpublished). The Fourth Circuit has "repeatedly applied an equitable tolling analysis to the [90-day] filing requirement set out in 42 U.S.C. § 2000e–5(f)(1)." *Dale v. Md. Dep't of Transp.*, ELH-13-191, 2015 WL 221628, at *12 (D. Md. Jan. 15, 2015). Courts in this Circuit conduct "a case-by-case examination to determine if an equitable tolling of the filing period is appropriate." *Nguyen*, *supra*, 1999 WL 556446, *3 (quoting *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir.1987)). Moreover, when "calculating the date on which period [begins] to run, the Fourth Circuit has rejected a mechanical approach or a strict 'actual receipt' rule," focusing instead on the facts "to determine when receipt has occurred." *Strothers v. City of Laurel Md.*, 118 F.Supp.3d 852, 860-61 (D. Md. 2015).

As a preliminary matter, Plaintiff Mason appended an email exchange and additional materials to his opposition to the Rule 12(b)(6) motion. (*See* ECF Nos. 53-1, 53-2). The First Amended Complaint references the email exchange and other facts. (*See* ECF No. 26, ¶¶ 131-138). Therefore, these exhibits are foundations to the Complaint and I may consider them at this state. *See Goines, supra*, at 166-67.

Defendant contends that the RTS letter was mailed on March 28, 2018, and because the date that Mason received the letter is unknown or disputed, there is a presumption that Plaintiff received it within three days of March 28, 2018 (ECF Nos. 51-1, p. 5; 51-3). Thus, the argument continues, Plaintiff untimely filed his complaint on July 7, 2018, i.e., between 4-8 dates late. (ECF 51-1, p. 7). Defendant relies on *Harvey* and *Nguyen* to support his arguments. Plaintiff counters that the first time that he received the RTS letter was on April 10, 2018, when it was emailed to him following his inquiry to the EEOC investigator about the status of his case. (ECF Nos. 53, p. 7; 53-1, 53-2). Plaintiff submits evidence that the RTS letter was not sent to his correct address. (*Id.*). According to the Plaintiff, then, the date of receipt is not in dispute; it is April 10, 2018. (ECF No. 53, p. 7).

This case is readily distinguishable from *Harvey* and *Nguyen*. In *Harvey*, the RTS letter was sent to the plaintiff via certified mail, which his wife accepted, but neglected to tell the plaintiff. The court held that "delivery of a right-to-sue letter **to [the] plaintiff's home** trigger[ed] the limitations period," and there was no evidence to support an equitable tolling of the filing period. 813 F.2d at 654 (emphasis supplied). In *Nguyen*, there was no dispute that the RTS letter was mailed and delivered to plaintiff's **home** while she was on vacation; her neighbor picked it up while she was away. The question involved the exact date that the letter arrived at **her home.** Because that date was unknown, the presumption of regular service by mail controlled (a three-day period). The court further found no factors to support equitable tolling. 1999 WL 556446, *11.

The key fact from *Harvey* and *Nguyen* is that the RTS letters were sent to the plaintiff's **home,** not to an incorrect address. As a practical matter, a letter sent to the wrong address means that the intended recipient will not receive any kind of notice from the EEOC. According to the First Amended Complaint, on March 28, 2018 the EEOC mailed the RTS letter to an address that

did not belong to Plaintiff. (ECF No. 36, ¶ 134). This occurred despite Plaintiff having used the 8731 Contee Road address as his mailing address since September 2016, and despite having verified his address with the EEOC in January 2018 (*Id.* ¶¶127-28, 135).

Assuming that Plaintiff has the burden of proving compliance with the limitations requirement, *compare Williams v. Enterprise Leasing Co. of Norfolks/Richmond*, 911 F.Supp. 988, 991-92 (E.D.Va. 1995), and considering the evidence and construing the facts in the light most favorable to the Plaintiff, Plaintiff has rebutted the presumption of receipt of the RTS letter 3 days after its issuance. Indeed, the facts not before me establish an actual date of receipt of April 10, 2018. (*See*, ECF Nos. 36, 53). This is not a case where the date of receipt was unknown or disputed. The Fourth Circuit has held that "if the actual date of receipt is confirmed by evidence," then that date governs. *Dixon v. Digital Equip. Corp.*, 976 F.,2d 725, 1992 WL 245867, *1 (4th Cir. Sept. 30, 1992)(unpublished). Accordingly, I will DENY the Motion to Dismiss based on the untimeliness argument.

### D. Employer/Joint Employer Issues

Sun Recycling avers that this Court should dismiss Plaintiff's First Amended Complaint because it never acted as Plaintiff's employer or joint employer during the time that he worked at the facility. In particular, Sun Recycling maintains that: (a) it never employed Mason; (b) it was never a "joint employer" of Mason, as it lacked sufficient control over him. (ECF No. 51-1, pp.8-9). Regarding "control," the argument continues, GJW: (1) hired and fired Plaintiff; (2) paid Mason; (3) maintained employment records for Mason; and (4) had a supervisor at the facility "for Plaintiff." (*Id.*, pp. 9-10). Moreover, the parties never intended Plaintiff to be a Sun Recycling employee, as evidenced by the service agreement that it and GJW signed. (ECF Nos. 51-1, p. 9;

51-3). Finally, Mason's job duties differed from those of Sun Recycling's "regular employees," and Mason "worked for companies at other sites." (ECF No. 51-1, p. 10).

## 1. The Law

An "employer" under Title VII is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or proceeding calendar year. . . ." 42 U.S.C. §2000e(f). An "employer" under the ADA is defined in the same way. 42 U.S.C.§12111(5)(A).

When analyzing a Title VII case, the Fourth Circuit recognizes that an employee may have more than one employer; this is known as the "joint employer" doctrine. The Fourth Circuit expressly adopted this doctrine in a case called *Butler v. Drive Auto. Industr. of Am., Inc.*, 793 F.3d 404, 408-09 (4th Cir. 2015). In *Butler*, the Fourth Circuit opined that in a circumstance whereby "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employe[e] who [is] employed by the other employer[,]" then both employers are deemed to be "joint employers." 793 F.3d at 408-09. Thus, in a Title VII case, a so-called "joint employer" cannot evade liability; this is consistent with the remedial intent of Title VII, which is to preclude an employer who, in effect, does employ a worker from "hiding behind another entity, such as a staffing agency." *Id.* This test is commonly referred to as a "hybrid test." The "hybrid test" is what applies in a Title VII case, not the "economic realities test" or the "control test." *Dreher v. Maryland*, Case No. GLR 17-3832, 2019 WL 528192, *3 (D.Md. Feb. 11, 2019).

There are nine factors to consider when applying the "hybrid test:"

(1) authority to hire and fire the individual;

(2) day-to-day supervision of the individual, including employee discipline;

(3) whether the putative employer furnishes the equipment used and the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance and taxes;

(5) the length of time during which the individual worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter into an employment relationship.

793 F.3d at 414. No singular factor is dispositive; rather, the first three factors "are the most important. *Id.* In addition, the ninth factor is "of minimal consequence," and forms part of the "overall fact-specific inquiry into the putative employee's circumstances." 793 F.3d at 414 n. 12. As a practical matter, then, "control" is the "principal guidepost for determining whether multiple entities can be a plaintiff's joint employers." *Id.* at 414-15.

### 2. Sun Recycling is a Joint Employer

#### a. Allegations in First Amended Complaint

In his First Amended Complaint, Mason states that GJW, a temporary staffing agency, hired him on October 31, 2013 after he completed an application (ECF No. 36, ¶¶ 27, 28, 30). On November 1,2013, Plaintiff began work at a facility owned by Sun Recycling, which was located in Beltsville, MD. (*Id.*, ¶ 30, 152). According to Plaintiff, between November 1, 2013 and February 21, 2014, every day while at the Sun Recycling facility ("the facility") he completed a "sign in" sheet at the start and end of each shift that he worked, as well as when he took lunch breaks. (*Id.*, ¶¶ 30, 148). This sign in/out sheet was "provided by Sun [Recycling]," and also used by its Hispanic workers. (*Id.*, ¶ 149). In addition, Sun Recycling's "management had daily control over

which employees worked and which employees did not work," as well as "control over the location and duration of the work to be performed." (*Id.*, ¶ 151). Also, Mason states that Sun Recycling's management provided the same training and same work materials (necessary to complete daily assignments) to Plaintiff as it did to its Hispanic employees. (*Id.*, ¶ 150). Moreover, as stated above in Section I, Mason asserts that he and an African American coworker were verbally reprimanded by a Sun Recycling supervisor for "goofing off," and that other African American workers were disciplined at the Sun Recycling facility while several Hispanic Sun Recycling workers who engaged in "horseplay" or other misconduct received no discipline. (*Id.,* ¶¶ 79, 80, 122-123). Furthermore, Plaintiff complained to Sun Recycling managers about the allegedly discriminatory verbal conduct of Hispanic workers and a Sun Recycling manager named "Evin," and was told to ignore it. (*Id.*, ¶¶ 40-41, 43). Plaintiff also described a January 6, 2014 staff meeting conducted in Sun Recycling's break room, which the GJW owner and a Sun Recycling manager attended. (*Id.*, ¶¶ 71, 73). During that meeting, Plaintiff complained about the daily harassment by the Hispanic workers. And, Mason described incidents in December 2013 and February 2014 in which a co-worker alleging made physically threatening gestures, which he reported to a Sun Recycling supervisor. (*Id.*, ¶¶ 68-70, 76-78).

Regarding termination, Mason stated that on November 20, 2013 a rock fell from the second story of the building and struck a piece of equipment, which was being operated by a Sun Recycling manager. (*Id.,* ¶¶ 46, 49). That Sun Recycling manager told Plaintiff that he was fired; later, a different Sun Recycling manager and a supervisor told him that he was fired. (*Id.,* ¶¶ 49, 54). Thereafter, on December 4, 2013, GJW notified Mason that Sun Recycling said that he had

been rehired and could return to the facility. (*Id.*, ¶ 62).[5] As set forth in Part I, Sun Recycling fired Mason two days after the incident with Evin (*Id.*, ¶¶ 86, 87). After Plaintiff was fired from the facility, GJW provided him with other work assignments. (*Id.*, ¶¶ 92, 100).

### b. Analysis

Applying the "hybrid test," I find that Sun Recycling was a "joint employer." It had the authority to hire and fire Mason: it hired him in November 2013, it fired him in December 2013, and it rehired him in December 2013. Sun Recycling supervised Plaintiff daily at its facility and reprimanded him for alleged misconduct. Sun Recycling provided the equipment that Mason needed to do his job, as well as training required to do his job, both of which were the same given to the Sun Recycling employees. Mason performed the same duties as did at least one Sun Recycling worker; he was working beside an unnamed Hispanic worker on November 20, 2013 when a rock fell, and he was later fired by Sun Recycling. During the period of November 1, 2013-February 23, 2014, when Mason worked at the facility he was not simultaneously working at another job. Thus, sufficient facts have been alleged to satisfy the following *Butler* criteria: (1), (2), (3), (6), (7), and (8); the critical piece being that the "control" factors demonstrate that Sun Recycling was Mason's "joint employer." Regarding the Lessor Agreement, I analyze it under factor (9), which is of "minimal consequence," per *Butler*. In reviewing the document, I agree that it plainly states that GJW employs Mason. (ECF 51-3). And I accept, for the purposes of argument, that by executing the document Sun Recycling never intended Mason to be an employee. However, the Lessor Agreement also says that GJW will "cooperate with [Sun Recycling] to provide and to

---

[5] After the EEOC investigation commenced, GJW stated in its position statement to the agency that Sun Recycling had requested Plaintiff's removal from the facility in November 2013, and also that Sun Recycling agreed to allow Plaintiff to return to work at the facility in December 2013 (*Id.*, ¶¶ 58, 63).

coordinate the workload and scheduling of the work to be performed by [Mr. Mason]." (ECF 51-3). Accordingly, I conclude, based upon the facts set forth in the First Amended Complaint," that Plaintiff has alleged with sufficient particularity that Sun Recycling was a joint employer during the period of November 1, 2013-February 23, 2014.

### E. Sufficiency of Allegations - Hostile Work Environment and Disparate Treatment

Title VII bars private employers from engaging in "any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Harassment based on race, which leads to a hostile work environment, represents one form of this prohibited discrimination. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015). Title VII also prohibits an employer from "discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e–2(a). Disparate treatment of a member of a protected class is prohibited. *Coleman*, *supra*, 626 F. 3d at 190.

#### 1. Hostile Work Environment

A "hostile work environment" is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [employment] and create an abusive work environment." *Boyer-Liberto*, 786 F.3d at 277. A Plaintiff advancing a "hostile work environment" claim based on race must allege that: (1)he was subjected to unwelcome conduct, (2)which was based on his race; (3) the conduct was sufficiently pervasive or severe to alter the conditions of employment and to create an abusive atmosphere; and (4) is imputable to the employer. *Strothers v. City of Laurel Md.*, 895 F.3d 317 (4th Cir. 2018)(citation omitted).

### a. Conduct by Hispanic Workers

With respect to the first element, Plaintiff complains that he was subject to unwelcome conduct. Plaintiff contends that he complained to Sun Recycling management, including to supervisors named "Evin" and "Vladimir," "on at least 20 occasions." Second, Plaintiff asserts that this conduct was based on his race; the workers used racial slurs, in addition to other pejorative language. (ECF 36, ¶¶ 34-37, 40) Regarding the third element, there are both subjective and objective facets; "the employee must both personally and reasonably believe that the conduct rises to the level of a hostile environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). To analyze whether the harassment is objectively abusive or hostile, courts examine the "totality of the circumstances," which includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. In this case, Plaintiff does not describe which Hispanic Sun Recycling workers called him racial slurs. In addition, he fails to articulate with any degree of requisite specificity how the workers' conduct interfered with his work performance. Accordingly, Sun Recycling's Motion to Dismiss Count I, as it relates to an allegedly hostile work environment created by the unnamed Hispanic workers, is GRANTED.

### b. Conduct by Sun Recycling Supervisor Evin

With respect to the first element, Plaintiff asserts that a Sun Recycling supervisor Evin repeatedly called him the "N-word" for the roughly 4-month period that he worked there, and that he and another co-worker complained to "Sun management" about this conduct. (ECF 36, ¶¶ 42-43). In addition, on February 21, 2014, Evin approached Plaintiff, calling him the "N-word," and threatened him with bodily harm. Two days later, GJW notified Plaintiff that Sun Recycling had

fired him from the facility. (*Id.*, ¶¶ 81,83, 87). Plaintiff has met the first and second elements of a hostile environment claim: unwelcome conduct (*see, e.g., EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)(employee satisfies burden by objecting to his employer), based on race (use of "N-word").

Regarding the third and fourth elements, Evin, a supervisor, routinely used a racist term when addressing Plaintiff during a roughly four-month period of time. During the last incident, Plaintiff showed Evin an EEOC complaint that he intended to file. Roughly two days after this last incident, Plaintiff was fired, i.e., his condition of employment was clearly altered. Plaintiff has met his burden. *See, e.g., Boyer-Liberto*, 786 F.3d at 280 (supervisor's use of racial slur "whether viewed as a single incident or as a pair of discreet incidents of harassment were sever enough to engender a hostile work environment"); *White v. BFI Waste Servs., LLC,*375 F.3d 288, 297 (4th Cir. 2004)(harassment severe/pervasive enough to give rise to actionable hostile work environment claim where "supervisors repeatedly called [plaintiff] and other black employees [the N-word], "boy" and [other derogatory phrases]"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001)(reasonable person could find conduct severe/pervasive where supervisor habitually called African American employee the N-word and "monkey"). Accordingly, Sun Recycling's Motion to Dismiss Count I, as it relates to an allegedly hostile work environment created by a Sun Recycling supervisor "Evin" is DENIED.

## 2. Disparate Treatment

In the First Amended Complaint, Plaintiff identifies the following acts that he claims are discriminatory disparate treatment: that he was fired because of the rock throwing incident, while the Hispanic worker next to him kept his job; and that Hispanic workers were not disciplined in any way for engaging in similar acts committed by African American workers.

To advance a claim of disparate treatment under Title VII, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.

An adverse employment action is "a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Thorn v. Sebelius*, 766 F.Supp.2d 585, 598 (D. Md. 2011) (internal quotation marks and citation omitted). In this case, the "adverse employment action" would have to be an act that "constituted a significant change in employment status," e.g., firing. *Hoyle v. Freightliner, LLC.*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

As to the first element, Defendant Sun Recycling does not challenge Mason's membership in a protected class. Similarly, Sun Recycling does not argue that Plaintiff has failed to assert facts that suggest similarly-situated employees were treated differently. Rather, Sun Recycling asserts that Plaintiff fails to show that his job performance was satisfactory, and also that Sun Recycling took an adverse employment action against him. (ECF No. 51-1, p. 13). Defendant relies on *Coleman v. Md. Court of Appeals*, and also reasserts its argument that it was not an employer of Plaintiff. (*Id.*).

In *Coleman*, an African American executive director of procurement and contract administration was terminated by his employer. Coleman alleged that his was fired because of his race, for seeking sick leave, and for allegedly steering contracts to vendors in which he had an interest. 626 F.3d at 187-88. Coleman alleged that he was retaliated against for having investigated another colleague, and that he was disciplined for allegedly steering contracts, while his white supervisor with "outside business involvements" was not disciplined. *Id.* at 190-91. The Fourth

Circuit held that the complaint failed to establish that Coleman and his supervisor were actually similarly situated, and that any impropriety committed by each of them "was comparable. *Id*. The Fourth Circuit also held that the plaintiff failed to establish that race was the actual basis that he was fired. *Id.* The *Coleman* opinion does not mention the satisfactory job performance issue. In any event, *Coleman* is distinguishable from the instant case.

Mason contends that Sun Recycling intentionally discriminated against him based on race by firing him for throwing a rock, which he maintains he did not do. In contrast, a Hispanic worker who was present for the incident received no discipline. He also asserts that he and an African American coworker were verbally reprimanded by a Sun Recycling supervisor for "goofing off," and that other African American workers were disciplined at the Sun Recycling facility while several Hispanic Sun Recycling workers who engaged in "horseplay" or other misconduct received no discipline.

Reviewing the First Amended Complaint, Mason has articulated facts that suggest disparate treatment by a Sun Recycling supervisor and a manager, Vladimir and/or Jay, as it relates to his firing on November 20, 2013. Mason and a Hispanic employee were working beside each other ostensibly engaged in the same conduct without any apparent differentiating circumstances between their conduct. The Sun Recycling manager named Jay treated them differently. In addition, Mason was fired by a Sun Recycling supervisor, whereas his Hispanic co-worker kept his job.

While it is a close call, I believe that Mason has demonstrated, at this juncture, that the Hispanic worker involved in the rock incident was a comparator who was "similarly situated" in meaningful ways, s*ee Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir.2008), yet only Mason was terminated. As stated above in Section III.D., I find that Plaintiff has established at this

procedural juncture that Sun Recycling was a joint employer. Mason's firing by Sun Recycling is an adverse employment action. *Compare Thorn, supra*, at 598. While Plaintiff does not affirmatively state that his performance was satisfactory, construing the evidence in the light most favorable to Plaintiff, Sun Recycling initially fired him ostensibly for throwing the rock, yet it then rehired him roughly two weeks later without explanation. The reasonable inference is that his job performance was satisfactory, or he would not have been rehired.

Regarding the verbal reprimand/ disciplinary actions, Mason has failed to sufficiently plead the fourth element of a disparate treatment claim (comparator evidence). Mason's allegations in this regard lack meaningful factual specificity. Mason has told me nothing about the Hispanic workers such that I can conclude that they are comparators. For instance, Mason has not set forth any facts describing: (a) the type of work done by the Hispanic workers- similar tasks/responsibilities?; (b) whether the alleged misconduct engaged in by the Hispanic and African American workers was the same; (c) whether the misconduct engaged in by the Hispanic and African American workers was subject to discipline by the same supervisors. In sum, there is no evidence that Plaintiff and other Hispanic workers are similarly situated. *See Sawyers v. United Parcel Serv.,* 946 F.Supp.2d 432, 442 (D.Md.2013) *aff'd,* 576 Fed.Appx. 199 (4th Cir.2014)(plaintiff's comparator allegations were bareboned and general; she failed to proffer sufficient evidence of similarities between herself and male co-workers).

In sum, Mason has stated a racial discrimination claim based on disparate treatment as it relates to the November 21, 2013 firing. However, Mason has not satisfied his burden on a racial discrimination claim for disparate treatment based on discipline. Therefore, Sun Recycling's Motion to Dismiss Count II, as it relates to the rock incident is DENIED; Sun Recycling's Motion to Dismiss Count II, as it relates to verbal reprimand/disciplinary actions is GRANTED.

### F. Sufficiency of Allegations – Disability

Pursuant to the ADA, it is unlawful for an employer to discriminate against a disabled individual. In particular, an employer cannot discriminate against a qualified individual "in regard to job application procedures, the hiring, advancement, or discharge of employees. . . and other terms, conditions and privileges of employment." *See* 42 U.S.C. § 12112(a); *Summers v. Altarum Inst. Corp,* 740 F.3d 325, 328 (4th Cir. 2014).

The term disability means "a physical or mental impairment that substantially limits one or more major life activities of an individual." *See* 42 U.S.C. § 12102(1). A "qualified individual" is someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individuals holds or desires." *See* 42 U.S.C. § 12111(8). "Discrimination" means "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship" on the employer's business. *See* 42 U.S.C. § 12112(b)(5)(A). A "reasonable accommodation" is one that: (1)"enables [a qualified] individual with a disability. . .to perform the essential functions of [a] position," 29 C.F.R. § 1630.2(o)(1)(ii)(2011); or (2) "enable[s] [am] employer with a disability to enjoy equal benefits and privileges of employment as are enjoyed by. . .other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii)(2011).

Moreover, an employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Furthermore, discharging a qualified employee because he is disabled is unlawful under the ADA. *Summers*, 740 F.3d at 328.

Plaintiff alleges that Sun Recycling failed to accommodate his mental disability. In order to adequately plead a claim for failure to accommodate[6], an employee must allege facts that demonstrate that: (1) he was an individual with a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of his job; and (4) the employer refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

The factual allegations in the First Amended Complaint do not establish a failure to accommodate under the ADA. The First Amended Complaint does allege that Mason has a mental disorder, which is a disability under the ADA (ECF No. 36, ¶¶ 10-11). The First Amended Complaint mentions that Mason told GJW about his mental health condition (*Id.,* ¶¶ 28, 64). However, the First Amended Complaint fails to clearly set forth facts that Sun Recycling had notice of his disability. Plaintiff merely implies that he told a Sun Recycling manager about his mental health condition. (ECF No. 36, ¶ 74). This is insufficient.

Next, Plaintiff maintains that he asked that Sun Recycling manager to relocate him "away from his Hispanic harassers. . . due to the stress, and anxiety related to his being daily harassed and his Bipolar disorder," and also asked another Sun Recycling manager to relocate him "away from the [Hispanic] harassers." (*Id.*, ¶¶ 74, 85, 118). In order for a duty to accommodate to arise under the ADA, "[t]here must be a causal connection between the major life activity that is limited and the [need for the] accommodation sought." *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687

---

[6] To survive a motion to dismiss related to a failure to accommodate, a plaintiff need not plead facts to establish a prima facie case. Rather, a plaintiff must state a plausible claim for relief. *Chappel v. City of Baltimore*, ELH-18-3328, 2019 WL 1746697, at *3 (D.Md. Apr. 17, 2019).

(8th Cir. 2003); *see also Long v. Howard Univ.*, 439 F.Supp.2d 68, 78 (D.D.C. 2006)("[I]t is the limitation arising from the disability that determines the need for accommodation, not merely the existence of the disability"). In another words, "an accommodation must be sought as a means to alleviate disability-induced limitations that impact an employee's job-related activities," *Hamel v. Board of Educ. of Hartford County*, JKB 16-2876, 2018 WL 1453335, * 12 (Mar. 23, 2018)(citation omitted). The case of *Hamel v. Board of Educ. of Hartford County* is instructive. In *Hamel*, Plaintiff, a teacher, had requested a transfer to a different school district in another part of the county. The defendant contended that her transfer request was not causally related to plaintiff's disability. Thus, summary judgment was ultimately appropriate as to plaintiff's failure to accommodate claim. 2018 WL 1453335, at *12. Plaintiff countered that her transfer request "was causally related to her [physical] disability because working at EES 'caused [her] a great amount of stress, which, in turn, exacerbated her physical disability.'" *Hamel*, 2018 WL 1453335, at * 12. The *Hamel* court presumed that the plaintiff was a disabled individual under the ADA, and that the employer had notice. The *Hamel* court then opined that:

> "at a minimum, Plaintiff must show that her requested accommodation is related to her physical limitations-i.e., it is plausible that had the accommodation been granted it would have alleviated her physical limitations and allowed her to perform an essential job function or enjoy 'equal benefits and privileges of employment' she otherwise could not."

2018 WL 1453335, at * 12. The *Hamel* court found that plaintiff failed to set forth any evidence "that her physical limitations prevented her from working [at the school]." In addition, the court found that plaintiff's transfer request was not because of her physical limitations, "but, rather because 'she faced harassment from [two people] as a result of her physical disability.'" *Id.* at *12. Put another way, "the driving force behind [p]laintiff's request for accommodation was *Defendant's* alleged harassment and not *Plaintiff's* physical limitations." *Id.* at *12 (emphasis supplied in original). Ultimately, the *Hamel* court found that even though plaintiff was disabled

and "working at [the school] may have exacerbated the symptoms of her condition," that alone was "not itself a justification for a transfer (or any other accommodation)." *Id.* at *14.

In this case, Mason has failed to set forth any evidence that his mental disability prevented him from working at the Sun Recycling facility. In addition, like the plaintiff in *Hamel*, his transfer request was because of the harassment that he faced at the hands of the Hispanic workers, not because of his mental limitations. Relatedly, Mason's allegation that he wanted to be relocated because of "stress and anxiety related to his being daily harassed and his bipolar disorder," (ECF No. 36, ¶ 74), is not sufficient to justify a transfer. *Compare Hamel*, *supra*, at * 14. Accordingly, Sun Recycling's Motion to Dismiss Count III is GRANTED.

### G. Sufficiency of Allegations – Retaliation

In Count IV of the First Amended Complaint, as it relates to Sun Recycling, Mason alleges that he was terminated in retaliation for requesting a reasonable accommodation (in violation of the ADA), and because he complained of discrimination (in violation of Title VII). (ECF No. 36, ¶¶ 183-187, 189).

Title VII prohibits an employer from retaliating against an employee because the employee opposed "any practice made an unlawful employment practice by [Title VII]," including complaining about discrimination to supervisors. *See* 42 U.S.C. § 2000e-3(a); *see also Romeo v. APS Healthcare Bethesda, Inc.*, 876 F.Supp.2d. 577, 588 (D.Md. 2012)(citation omitted). The elements of a retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse action by an employer; and (3) a causal link between the protected activity and the action taken by the employer. *See Mackey v. Shalala,* 360 F.3d 463, 469 (4th Cir.2004); *see also Strothers v. City of Laurel*, *supra*, 895 F.3d at 327 n.3("adverse action need not be employment- or workplace-related in order to sustain a retaliation claim").

The ADA also prohibits retaliation. *See* 42 U.S.C. §12203(a). To establish a claim of retaliation under the ADA, a plaintiff must set forth sufficient facts that: "(a) he was engaged in a protected activity; (b) his employer took an adverse action against him; and (c) a causal connection between the adverse activity and the protected action." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001).

Defendant Sun Recycling's addresses the ADA-related retaliation claim; however, it does not address the fact that Count IV also raises retaliation under Title VII. (ECF Nos. 51-1, 56).

Regarding the ADA retaliation claim in Count IV, I previously found in Section III.F. that Sun Recycling did not have notice of Mason's disability. Accordingly, Sun Recycling's Motion to Dismiss Count IV, as it relates to retaliation predicated on a failure to accommodate a disability, is GRANTED.

Regarding the Title VII retaliation claim in Count IV, Mason refers to the February 21, 2014 incident with Sun Recycling supervisor named "Evin," in which Evin called Plaintiff the "N-word" after Mason showed him copies of EEOC policies and informed Evin of his intent to file a charge of discrimination and harassment with the EEOC against Sun Recycling. (*Id.*, ¶ 183). I find that complaining to your supervisor about discrimination and telling him of a potential lawsuit against Sun Recycling based on discrimination, is engaging in a protected activity, even where, as here, that supervisor has also allegedly discriminated against you. *Bryant v. Aiken Regional Medical Centers, Inc.,* 333 F.3d.536, 544 (4th Cir. 2003). Two days after Mason complained, an adverse action was taken against him; i.e., he was fired. Regarding causation, "little proof" is required. *See*, *Romeo*, *supra,* at 588 (citation omitted). Only two days elapsed between the incident with Evin and Mason's termination. I find that this short period of time between Mason's

complaint and his termination establishes the requisite causal link. Accordingly, Sun Recycling's Motion to Dismiss Count IV, as it relates to retaliation predicated on Title VII, is DENIED.

**III.    Conclusion**

For the foregoing reasons, ECF No. 51 is **GRANTED IN PART, DENIED IN PART**. In addition, ECF No. 61 is **DENIED**. A separate Order will issue.


Dated:  March 9, 2020                                        _____/s/_____
                                                             The Honorable Gina L. Simms
                                                             United States Magistrate Judge